UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

                                         **No. 4:22-cr-00372-P**

MICHAEL SAMUEL DEKELBAUM,

   Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Opposed Motion to Withdraw Plea of Guilty. ECF No. 62. Having considered the Motion and applicable law, the Court determines the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Michael Dekelbaum was arrested on November 15, 2022, in Parker County, Texas. When arresting officers searched his home, they purportedly found a Ziploc bag containing crystal meth. Dekelbaum was released on pre-trial detention shortly thereafter and was charged with Conspiracy to Possess a Controlled Substance with Intent to Distribute on December 14, 2022. He lawyered up, retaining Taly Haffar[1] as counsel in January 2023. Dekelbaum says numerous defects in Haffar's representation landed him in his current predicament, with a guilty plea on the books that he wishes to withdraw.

From the start, Dekelbaum says Haffar eschewed his attempts to provide input regarding the search of his home and his larger criminal defense. From his case's nascency, Dekelbaum says Haffar ignored his repeat protests that the Government relied upon false information in

---

[1]This opinion is not intended to cast any aspersions at Attorney Haffar but relies on Dekelbaum's allegations concerning Mr. Haffar's representation. In the two decades the Court has known Mr. Haffar and personally witnessed his legal skills, the Court has found his counsel to be consistently wise and his representation of clients to be zealous and effective.

obtaining and executing a search warrant for his home. In particular, Dekelbaum contests the Government's representations regarding a quarter pound of crystal meth located in Dekelbaum's bathroom. When Dekelbaum pressed Haffar to move to suppress this evidence, his suggestions allegedly fell on deaf ears. Things only got worse from there. In June 2023, Dekelbaum says Haffar pressured him to enter a guilty plea despite his reluctance to do so and a post-surgery malaise that hindered his cognitive ability.

When urged to take the plea deal, Dekelbaum informed Haffar that he had just undergone dental surgery and was instructed not to make decisions that required alertness or mental clarity. Nevertheless, Haffar allegedly told Dekelbaum he had to "make a decision that day." He did, executing the Plea Agreement "despite not having a chance to review it with his attorney and cross[] out portions of the agreement."

Dekelbaum had buyer's remorse immediately. Two days after taking the deal, Dekelbaum told Haffar he "should not have signed the agreement" and asked if the Government "had any additional discovery in his case that they had not shared." Before taking the deal, Dekelbaum had informed Haffar that body cam footage from arresting officers would prove the initial search of his residence was improper, as it directly contradicts law enforcement reports about the whereabouts of drugs in Dekelbaum's home. Once again, Haffar assured him that all salient evidence had been turned over and reviewed.

After he was named in a one-count Superseding Information pursuant to the Plea Agreement, Dekelbaum retained new counsel—Phillip Linder—to assuage concerns he had with Haffar's representation. Both attorneys met with Dekelbaum on July 7, 2023, at which time Dekelbaum was presented with a copy of the finalized Plea Agreement to sign. At this meeting, Dekelbaum was told the Government needed "an original signature" and "the one previously sent by Dekelbaum was not sufficient." But "[u]nbeknownst to Dekelbaum, the copy he signed on July 7 did not include the markups he had made to the plea documents he signed on June 23." At all times relevant to the

proceeding, Dekelbaum persisted in his belief that the Government was withholding favorable video evidence.

As luck would have it, Linder located the missing evidence in August 2023. As Dekelbaum sees things, the new evidence proves the Government's search warrant was based upon false information. Come to find out, Haffar had only reviewed "in-house" evidence divulged by the Government. Apparently, the Government told Haffar the remaining evidence lacked "significant evidentiary value," so Haffar didn't review it. When informed of this, Dekelbaum told his lawyers he wanted to withdraw his plea based upon the newly surfaced evidence. Haffar prepared a motion to withdraw in August, but Dekelbaum vetoed that motion because it allegedly contained "several inaccurate statements." He then sought and obtained new counsel, who brings the instant motion on his behalf.

## LEGAL STANDARD

At the heart of the American criminal justice system lies the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime has been committed." *See* U.S. CONST. art. VI, § 1. But nobody goes to trial anymore.[2] Rather, a vast majority of cases plead out under the framework provided by Federal Rule 11. *See* FED. R. CRIM. P. 11(a)–(h); *see generally U.S. v. Gonzalez*, 309 F.3d 882, 885–888 (5th Cir. 2002) (explicating the rules governing plea and proffer agreements in federal court). Once a plea is made, the Court can "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." FED. R. CRIM. P. 11(c)(1).

Criminal defendants don't enjoy an absolute right to withdraw a guilty plea. *U.S. v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015); *see U.S. v. Lampazianie*, 251 F.3d 519, 523–24 (5th Cir. 2001) ("We note at the

---

[2]Last year, for instance, only 2.3% of federal criminal cases (1,669 of 71,952 defendants) went to trial. *See* J. Gramlich, *Fewer than 1% of federal criminal defendants were acquitted in 2022*, PEW RESEARCH (June 14, 2023), https://www.pewresearch.org/short-reads/2023/06/14/fewer-than-1-of-defendants-in-federal-criminal-cases-were-acquitted-in-2022.

outset that there is no absolute right for a defendant to withdraw a plea."); *see also* FED. R. CRIM. P. 32(e) (noting acceptance of a withdrawal is within the Court's discretion). Rather, "a defendant may withdraw a guilty plea if he or she 'can show a fair and just reason for requesting the withdrawal.'" *United States v. Armendariz*, 80 F.4th 546, 550 (5th Cir. 2023) (quoting FED. R. CRIM. P. 11(d)(2)(B)). To determine if there's a "fair and just reason" for withdrawal, courts analyze the seven factors originally enumerated in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). These include:

> (1) whether the defendant asserted his actual innocence; (2) whether withdrawal would prejudice the Government; (3) the extent of the delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the court; (5) whether the defendant had the benefit of close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources.

*Id.* Importantly, "no single factor or combination of factors mandates a particular result, and "the district court should make its determination based on the totality of the circumstances." *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996). "[T]he burden of establishing a fair and just reason for requesting withdrawal under *Carr* 'rests with the defendant.'" *Harrison*, 777 F.3d at 234 (quoting *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)).

## ANALYSIS

Dekelbaum says a withdrawal is warranted because (1) the Government allegedly breached the Proffer Agreement and (2) even if it didn't, a withdraw is still fair and just given the totality of this case's circumstances. *See* ECF No. 62 at 14, 19. As explained below, the Court disagrees with his first point but agrees with his second.

### A. The Government didn't breach the Proffer Agreement.

Dekelbaum's Motion came out swinging by alleging the Government breached non-disclosure covenants made to solicit his testimony in initial interviews. *See* ECF No. 62 at 15–19. He argues "it is clear the government breached its agreement" and thus "elects [] the remedy of

4

withdrawal of his guilty plea." *Id.* at 19. His allegations date back to March 30 and May 4 of this year, when Dekelbaum voluntarily participated in interviews wherein he revealed incriminating information after being assured such information would not be used against him pursuant to a Proffer Agreement. *See* ECF Nos. 59-1; 59-2. Fast-forward to the Government's arguments in response to Dekelbaum's objections to the Presentence Investigation Report ("PSR"). In countering Dekelbaum's objections, the Government referenced incriminating information divulged in interviews with Dekelbaum—information covered by the Proffer Agreement. *See* ECF Nos. 59; 59-1; 59-2.

There's no denying the Government revealed Dekelbaum's self-incriminating statements in advocating for a higher sentence under the Guidelines. *See id.* But looking to the Proffer Agreement itself, the Government is not wholly excluded from using Dekelbaum's self-incriminating statements. Rather, the Government can disclose such incriminating information (1) for impeachment at trial and/or (2) if Dekelbaum "offers evidence or takes any position in such trial or proceeding which is inconsistent with statements made in the interview(s)." ECF No. 62-1 at 2. The Proffer Agreement also expressly incorporated the exceptions under U.S.S.G. § 1B1.8(b). *Id.*

Dekelbaum is correct in citing case law that notes "the most natural interpretation of [provisions incorporating U.S.S.G. § 1B1.8(b)] is that the Government would not rely on protected information to advocate for a greater sentence." *See* ECF No. 62 at 15 (citing *United States v. Chavful*, 781 F.3d 758, 762 (5th Cir. 2015)). That's fair textualism, as the Proffer Agreement says "any self-incriminating information disclosed is not to be used in determining any applicable guideline range." ECF No. 62-1 at 2; *see U.S. v. Harper*, 643 F.3d 135, 140 (5th Cir. 2011) ("According to our case law, information provided pursuant to a use immunity plea agreement may not be used in determining the applicable guideline range under the Sentencing Guidelines.") (internal citation and quotation marks omitted). But Dekelbaum ignores the Proffer Agreement's express exceptions and, with respect to U.S.S.G. § 1B1.8(b), he overlooks the words "subject to certain limitations stated

5

therein." *Id.* The devil is in the details for Dekelbaum's Proffer Agreement, and the Government's use of Dekelbaum's self-incriminating statements comported with the Agreement's express and incorporated exceptions.

The record reflects that the Government used Dekelbaum's self-incriminating statements to counter conflicting statements in Dekelbaum's PSR objections and to counter Dekelbaum's arguments in favor of a downward reduction. *See* ECF Nos. 59; 59-1; 59-2. The Proffer Agreement allowed them to do so. *See* ECF No. 62-1. So while a defendant may always withdraw a plea if the Government breaches a proffer or plea agreement, *see United States v. Cuff*, 79 F.4th 470, 477 (5th Cir. 2023), the Government never breached the Proffer Agreement as Dekelbaum suggests.

Had the Government used Dekelbaum's self-incriminating statements at the outset to advocate for applicability of a certain guideline range, Dekelbaum's argument would persuade. But they didn't: they only introduced this information to counter the factual narrative in Dekelbaum's objections and resist a reduction from applicable guidelines. As the Fifth Circuit explained in *Harper*:

> There may be some circumstances when it is appropriate for a district court to consider a defendant's immunized statements. For example, as already discussed, a district court may consider immunized statements at a taint hearing or for purposes of impeachment. A district court also may consider immunized statements *in determining whether, or to what extent, a downward departure from the guidelines is warranted* . . . But none of this means the Government has blanket authorization to disclose on its own initiative and without any legitimate purpose a defendant's immunized statements to the district court.

643 F.3d at 143 (internal quotation marks and citations omitted). Had the Government come out of the gate with Dekelbaum's self-incriminating statements, Fifth Circuit precedent is clear that the Government's breach would justify withdrawal. *Id.* at 142–43 ("Relatedly, we have observed § 1B1.8 of the Sentencing Guidelines does not prohibit disclosure of information provided in a plea [or proffer]

agreement at sentencing, but rather, it prohibits this information from being used to determine the applicable guidelines range.") (cleaned up and collecting cases). Because the applicable range had already been determined and the Government used Dekelbaum's statements only to contest a downward reduction, the Government's use was appropriate under the Proffer Agreement. *See id.* Accordingly, the Court is unpersuaded by Dekelbaum's first argument in favor of withdrawal.

## B. Withdrawal of Dekelbaum's plea is fair and just.

Even if the Government didn't breach the Proffer Agreement, withdrawal of Dekelbaum's plea may nonetheless be warranted. At the end of the day, Dekelbaum still has a constitutional right to a trial by a jury of his peers. *See* U.S. CONST. art. VI, § 1. While this right may take the backseat to agreements knowingly and voluntarily entered with prosecutors, the Court is mindful that the "bright constellation" of the American criminal justice system is the rendition of "equal and exact justice to all men [] of whatever state or persuasion."[3] Thus, when faced with a criminal defendant who wishes to withdraw their plea, the Court must ask if the totality of circumstances indicate a withdrawal is "fair and just." *See Armendariz*, 80 F.4th at 550. Having conducted a holistic review here, the Court finds a withdrawal of Dekelbaum's plea would be "fair and just"—notwithstanding the Court's finding that the Government didn't violate the Proffer Agreement.

In reaching its conclusion, the Court examines the seven *Carr* factors. *See* 740 F.2d at 343–44. Mindful that "no single factor or combination of factors mandates a particular result," *Still*, 102 F.3d at 124, the Court finds the first, fifth, and sixth *Carr* factors favor withdrawal, the second and third disfavor withdrawal, and the fourth and seventh are neutral. The Court discusses below the three factors favoring withdraw (factors one, five, and six) and the strongest factor disfavoring withdraw (factor three). The Court sees no compelling

---

[3]*See* Thomas Jefferson, FIRST INAUGURAL ADDRESS (1801), in *Collected Works of the National Constitution Center*, https://constitutioncenter.org/the-constitution/historic-document-library/detail/thomas-jefferson-first-inaugural-address-1801.

reason to discuss the weaker factors disfavoring withdraw or the neutral factors immaterial to the Court's analysis. *See generally United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) (noting "the district court is not required to make explicit findings as to each of the *Carr* factors).

    1.  <u>The first, fifth, and sixth *Carr* factors favor withdrawal.</u>

    **Factor One.** The first *Carr* factor asks whether a criminal defendant has asserted his or her actual innocence. *See* 740 F.2d at 343. But if the mere assertion of actual innocence sufficed to withdraw suboptimal pleas, criminals everywhere would simply assert their innocence and call it a day. To hedge against this risk, naked assertions of actual innocence are given no credence. *Harrison*, 777 F.3d at 234. Rather, "[u]nder the *Carr* framework, the defendant must not only assert his innocence, but also provide a substantial supporting record for this assertion." *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020) (citation omitted). Dekelbaum has satisfied this requirement.

    From the very outset, Dekelbaum asserted actual innocence by entering a plea of not guilty on December 20, 2022. *See* ECF No 62-6 at 1–2. His Motion details examples whereby he vehemently insisted upon actual innocence in discussions with counsel. *See* ECF No. 62 at 20. As recently as last month, Dekelbaum asserted actual innocence in the narrative accompanying his motion for a continuance. *See* ECF No. 62-7 at 1–7. Admittedly, the big bag of meth cops found at his house is a "bad fact" for Dekelbaum. But insofar as the charge is for possession with intent to distribute, the record indicates Dekelbaum has remained resolute in his assertions of actual innocence. With a "substantial supporting record" for his assertion, the first *Carr* factor favors withdrawal. *See Strother*, 977 F.3d at 444.

    **Factor Five.** The fifth *Carr* factor asks if a defendant "had the benefit of close assistance of counsel." *See* 740 F.2d at 434. The Fifth Circuit has reiterated that "a constitutionally effective assistance of counsel inquiry is distinct from an inquiry into whether a defendant received close assistance of counsel (one of the seven factors relevant to the consideration of a plea withdrawal under the *Carr* framework)."

*Strother*, 977 F.3d at 442–43. Sixth Amendment considerations aside, this calls for a "fact-intensive inquiry." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009).

Piercing the veil of the attorney-client relationship in criminal contexts necessitates a subjective analysis. Without speaking to the quality of legal services offered by Dekelbaum's counsel, it may well be said that Dekelbaum lacked "close assistance of counsel" if he *felt* like he did. And the Motion and attached exhibits show Dekelbaum's concerns with counsel reach far back in this case. As detailed in Exhibit 12 and recounted in the Motion, Dekelbaum felt:

> (1) there were "errors" in the plea agreement that had not been corrected; (2) that he was being "pressured" into signing the deal; (3) that Attorney Haffar had not reviewed the plea with him prior to requesting him to sign the agreement; and (4) that Attorney Haffar's actions indicate a potential conflict of interest.

ECF No. 62 at 30–31; *see also* ECF No. 62-12 at 1–4. Fortunately, the Court need not inquire as to the accuracy of Dekelbaum's observations vis-à-vis Mr. Haffer. For purposes of the *Carr* analysis, what matters is that Dekelbaum felt dissonance between himself and Haffar. Here, there is a clear record to suggest Dekelbaum felt he had no "close" relationship with Haffar. *See id.* Thus, this factor also favors withdrawal.

**Factor Six.** The sixth *Carr* factor asks whether a defendant's plea was knowing and voluntary. 740 F.2d at 434. The north star of any plea arrangement, a plea is considered "knowing and voluntary" where "the defendant . . . is advised of and understand[s] the consequences of the plea." *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992). This consists of an objective element (*i.e.*, whether a defendant's lawyer advised them of relevant consequences) and a subjective element (*i.e.*, whether the defendant understood those consequences). The odds are stacked against defendants in Dekelbaum's shoes, as "[a] defendant's 'statement that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid.'" *United States v. Landreneau*, 967 F.3d 443, 450 (5th

9

Cir. 2020) (citing *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007)). But Dekelbaum's Motion justifies a finding that he was at least partially precluded from appreciating the consequences of his plea under the circumstances of this case.

Criminal defendants deserve to know the relevant facts when pleading guilty. While the Government doesn't have to play all its cards, the defendant should at least know what cards are on the table. Among other things, this calls for sufficient advice from a defendant's counsel under the circumstances of a given case. "In the context of a guilty plea, counsel's performance is deficient when his advice leaves the defendant unable to make an informed and conscious choice to plead guilty." *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir 2008). As the Motion details, Dekelbaum believed time was of the essence when making his plea decision and erroneously thought all exonerating evidence had been turned over to his counsel. *See* ECF No. 62 at 34. But that wasn't the case, as the Government later turned over additional evidence that, according to Dekelbaum, substantially bolsters his defense. *See* ECF No. 62 at 8–10. Had the Government turned over the body cam footage beforehand, Dekelbaum wouldn't have pleaded guilty. *Id.* But because Haffar told him all salient evidence had been overturned and reviewed, he erroneously believed pleading guilty was the only path forward. It was only after Dekelbaum executed the Plea Agreement that Haffar acknowledged he didn't personally review all the evidence to verify Dekelbaum's assertions. That significantly undercuts the propriety of enforcing Dekelbaum's plea.

Adding more bad optics for Dekelbaum's prior counsel, Dekelbaum explicitly told his lawyer he just had dental surgery and was instructed not to engage in anything requiring sharp cognition. *See id.* at 8. And sure enough, the record shows Dekelbaum got out of surgery the *very same day* his lawyer encouraged him to take the Government's plea deal. *See* ECF No. 62-13 at 1–3. It is inadvisable to encourage one's client to plead guilty when they have a doctor's note telling them they will experience residual post-operative brain fog for 24–48 hours. *See id.* Perhaps Haffar was under pressure from prosecutors to get a plea deal

across the finish line—it cannot be held against him for communicating this urgency to Dekelbaum. But the fact remains that Dekelbaum was advised by physicians to avoid mentally demanding activities and Haffar nonetheless encouraged him to accept a deal whereby he admitted guilt to a federal crime and waived constitutional rights vis-à-vis the defense of his interests.

Courts are typically loath to find a defendant made an unknowing or involuntary plea based upon deficient representation unless such deficient representation rises to the level of ineffective assistance of counsel. *See Cavitt*, 550 F.3d at 41. If courts routinely find less-than-stellar representation rendered a plea unknowing or involuntary, a wave of litigants will begin nitpicking their lawyer's performance for ammunition to support motions like this. Give an inch, people tend to take a mile. Nevertheless, Dekelbaum's Motion details a litany of suboptimal professional decisions that supports a withdrawal of Dekelbaum's plea. Accordingly, the Court finds the sixth *Carr* factor weighs in favor of withdrawal.

2. The third *Carr* factor weighs against withdrawal.

While none of the *Carr* factors swing the Court's analysis against withdrawal, the Court briefly touches the third factor—"the extent of the delay, if any, in filing the motion to withdraw"—to explain why that consideration doesn't change the outcome. *See* 740 F.2d at 344. As noted above, "no single factor . . . mandates a particular result" in the *Carr* analysis. *Still*, 102 F.3d at 124. But if any one factor came close, it would be the weighty consideration of delay. In *Carr*, for instance, the Court found twenty-two days was too long for a motion to withdrawal to prevail. 740 F.2d at 345. It was several months in this case. Dekelbaum acknowledges as much, noting "the delay in the filing of this motion would typically be considered significant and weigh against allowing withdrawal." ECF No. 62 at 23. He's right—only the thrust of other persuasive considerations could tip the Court's analysis considering such a lengthy delay in bringing the instant Motion.

Much of Dekelbaum's rationale in seeking to withdraw his plea is predicated on deficient assistance from prior counsel. Reserving any

11

comment about the particulars of Dekelbaum's grievances, the Court notes his complaints about prior representation are not patently unmeritorious. Thus, insofar as the delay in bringing this Motion was primarily caused by Dekelbaum's seeking new counsel to bring it, the Court acknowledges a certain degree of delay was unavoidable. *See* ECF No. 62 at 23. Indeed, it would not instill confidence in a defendant for their present attorney to draft a motion largely predicated on that attorneys' ineptitude—and would certainly not bridge any perceived gaps in the professional relationship. The Motion acknowledges this argument is a long-shot, as scarce are the cases holding a delay of this length is acceptable. *See id.* Nevertheless, considering "no single factor . . . mandates a particular result," and other factors heavily favor the requested withdrawal, the Court finds Dekelbaum's delay in bringing this Motion does not warrant its denial. *See Still*, 102 F.3d at 124.

## CONCLUSION

For the foregoing reasons, the Court finds a withdrawal of Defendant Michael Dekelbaum's plea of guilty would be fair and just under the totality of the case's circumstances. Accordingly, the Court **GRANTS** Dekelbaum's Opposed Motion to Withdraw Plea of Guilty. ECF No. 62.

**SO ORDERED** on this **14th day** of **December 2023**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE